IN THE UNITED STATES COURT OF FEDERAL CLAIMS
**Bid Protest**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

GOVCIO, LLC,

    Plaintiff,

v.

THE UNITED STATES,

    Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Redacted Version**

Case No. _____

## COMPLAINT

GovCIO, LLC ("GovCIO"), for its complaint against the United States, states as follows:

### NATURE OF THE ACTION

1. This is a post-award bid protest action seeking injunctive and declaratory relief against the United States Department of Treasury, Internal Revenue Service ("IRS") in connection with Request for Quotations No. 2023H2-25-Q-00029 ("RFQ"), issued under the General Services Administration's Multiple Award Schedule ("MAS").

2. The RFQ is for the award of a task order for the scanning and digitalization of paper tax filings and related records. The IRS awarded Task Order No. 2023H2-25-F-00055 under the RFQ to Iron Mountain Information Management, LLC ("Iron Mountain") in the amount of $142,406,958.04 on a sole-source basis.

3. There was no factual or lawful basis for the IRS to conclude that only Iron Mountain has the capability of meeting the IRS's current file scanning needs or that using only this preselected vendor, without competition, is fair or rational.

4. If the IRS has an urgency to digitize records and save taxpayers unnecessary

processing costs—a goal GovCIO fully supports—the solution is to compete its requirement on an expedited basis, not sidestep competition requirements by giving Iron Mountain a sole-source contract with an 18-month period of performance.

5. If a true urgency exists, the IRS can narrowly address the urgency with an actual short-term bridge contract to cover the several weeks, or perhaps two months, necessary to complete the competition.

6. If the IRS is not yet ready to procure a full production or enterprise contract and will require up to 18 months to complete the main acquisition, then the so-called "bridge" award to Iron Mountain needs to be competed in the interim.

7. Multiple prospective offerors, including GovCIO, have the capability, experience, capacity, and resources to meet the IRS's scanning needs. GovCIO is currently providing the IRS Digitalization and Conversion Acceleration Support ("DCAS") as a major subcontractor, having already scanned more than ▮▮▮▮ and submitted ▮▮▮▮ to the IRS. GovCIO is currently processing ▮▮▮▮ images per week and anticipates scanning ▮▮▮▮ by the end of the DCAS contract. GovCIO has also digitized more than ▮▮▮▮ for the Department of Veterans Affairs ("VA") over the last 12 years.

8. GovCIO demonstrated its capabilities and interest in competing for the IRS's file scanning requirement as recently as April 8, 2025, when it responded to Request for Information No. RFQ1751447 ("RFI"), which sought responses from prospective vendors interested in a draft Performance Work Statement ("PWS") for the IRS's subject "Scanning as-a-Service 2025" ("SCaaS") requirement.

9. The IRS, however, disregarded GovCIO's response and refused to provide the RFQ to GovCIO or otherwise publish it publicly, which unlawfully deprived GovCIO of an opportunity

to compete.

10. GovCIO supports the IRS's modernization efforts including the rapid digitalization of files, but there is no urgency or any other compelling circumstance for avoiding competition. A meaningful competition for the task order can take place in a matter of a few weeks or months.

11. Fair and open competition for the award of contracts spending taxpayer money is a foundational principle and feature of the federal procurement system that ultimately protects taxpayer resources and the integrity of government purchasing decisions.

12. Competition is in the best interest of U.S. taxpayers, and furthers the government's commitment to eliminating wasteful spending, because it ensures that the IRS will receive the best proposals and obtain the best value.

13. Competition is not an obstacle or inconvenience that agencies may brush aside for the sake of speed.

14. The IRS's procurement of scanning services under the RFQ was arbitrary, capricious, and contrary to law.

## PARTIES

15. GovCIO is a federal contractor based in Fairfax, Virginia.

16. The IRS is a component of the Department of Treasury, an executive agency of the United States, and the contracting agency responsible for the challenged procurements.

## JURISDICTION AND STANDING

17. The Court has jurisdiction over this bid protest action pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996. *See* 28 U.S.C. § 1491(b)(1).

18. GovCIO is an interested party to protest because it is a prospective offeror whose direct economic interest is adversely affected by the IRS's actions which, among other things,

deprive GovCIO of an opportunity to compete. GovCIO, by itself or through combination with teaming partners, is fully capable of meeting all of the IRS's requirements and submitting a responsive, competitive quote in response to the RFQ.

## **STATEMENT OF FACTS**

19. On April 4, 2025, the IRS issued the RFI for procurement against the General Services Administration Multiple Award Schedule ("MAS"), along with a draft PWS, for its SCaaS requirement. Exhibit ("Ex.") 1.

20. The RFI stated:

> The Department of the Treasury (Treasury), Internal Revenue Service (IRS), is requesting additional information for current market capabilities of scanning as a service (i.e., document conversion and digitization services) providers with the capability to process a significant volume of documentation to assist the IRS in becoming a zero-paper Agency. The IRS is seeking to partner with a vendor who can assist the IRS in its digitization and modernization efforts. The vendor must have cleared personnel, adequate space and a proven software solution capable of handling the shipping and receiving, document preparation, scanning, extraction, indexing and transmission of over 21 million forms and 26 million pieces of correspondence annually. Reference Attachment 1 – DRAFT Scanning as a Service Performance Work Statement (PWS) for a full description of the requirement. The acquisition strategy is to be determined.

*Id*.

21. The PWS summarized the anticipated procurement as follows:

> The IRS receives tens of millions of pieces of mail annually, with the contents of each receipted envelope containing individual or multiple pieces of paper in the form of correspondence and/or tax and/or information returns and various other tax forms either with or without remittance. The IRS must manually process and store the pieces of paper. To manage this capacity and improve taxpayer service, we are seeking proven scanning solutions to modernize submission processing while complying with all applicable policies and timeframes. The IRS is committed to creating an environment where IRS data is available, accessible, and usable in a format that enables data-driven decision-making at all levels of the organization. These efforts shall support improvements to taxpayer service, enhance the fairness of our compliance efforts, address federal guidelines (e.g., Office of Management and Budget (OMB) M-19-21, NARA 2022 mandate).

*Id.*

22. The core objective of the contemplated procurement was to obtain "proven scanning solutions that can scan paper tax and/or information returns, tax forms and/or correspondence; segment, and index these images per schemas and guidelines, extract, capture and format all information/data from these items per schema and guidelines for transmission through the Internal Revenue Service's Modernized Electronic Filing (MeF) and/or other IRS systems." *Id*.

23. The RFI is a continuation of the IRS's pilot program for file scanning using the IRS's Modernized Electronic Filing ("MeF") system that the IRS awarded to Iron Mountain in or around 2021 or 2022.

24. Responses to the RFI were due on April 8, 2025, indicating that the IRS was moving forward with this significant procurement on an accelerated basis. *Id*.

25. On April 8, 2025, GovCIO timely responded to the RFI. *See* Ex. 2. On information and belief, multiple other prospective vendors submitted responses to the RFI.

26. GovCIO's response to the RFI demonstrated that it was fully capable of performing the requirement based on its current scanning, conversion, and digitization efforts with the IRS and past work with the VA. Among other things, GovCIO explained ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The DCAS contract is ongoing and substantially similar to the IRS's subject scanning and conversion requirement.

27. As a ▮▮▮▮▮▮▮▮▮▮▮▮, GovCIO provides ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. GovCIO uses its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, along with the ability to quickly add ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. GovCIO also has ▮

███████████████████████████████████████████████████████████████████████████████.

28. Not only does GovCIO currently perform these services for the IRS on the DCAS contract, but GovCIO also has successfully converted over ████████████ over the last 12 years for the VA. The scanning and conversion processes that GovCIO applies for the VA are substantially similar to the IRS's requirements and further demonstrate GovCIO's resources, experience, and capability to perform the subject services.

29. In addition to demonstrating its capabilities and experience, GovCIO proposed ███████████████████████████████████████████████████████████████████████████████ █████.

30. Although Iron Mountain may have an advantage due to its participation in the IRS's pilot program, there are currently more than two dozen IRS MeF providers that could team with GovCIO.

31. Consistent with FAR Parts 8.4 and 21.0, GovCIO's RFI response made clear that it was fully qualified to meet agency requirements and that it intended to submit a quote.

32. Despite readily establishing that GovCIO was a qualified and prospective offeror, the IRS did not communicate with GovCIO any further.

33. Unbeknownst to GovCIO at the time, and despite the RFI stating that the "acquisition strategy is to be determined," the IRS rapidly moved forward with the RFQ in the days following the April 8, 2025 RFI response deadline.

34. On April 22, 2025, the IRS issued the RFQ exclusively to Iron Mountain for "Scanning as a Service, including the digitalization of paper tax and/or information returns." Ex. 3.

35. The IRS did not provide a copy of the RFQ to GovCIO or any other vendors that

submitted RFI responses, nor did the IRS make the RFQ public.

36. The RFQ required Iron Mountain to submit a quote by April 28, 2025, just four business days after issuing the RFQ.

37. On April 30, 2025, the IRS awarded the task order to Iron Mountain, which was only two days after receiving its quotation. The total award value is $142,406,958.04.

38. The maximum completion dates, with options, for the task order is October 24, 2026, which means the IRS anticipates up to 18 months to plan and compete its main SCaaS requirement.

39. On May 5, 2025, GovCIO filed a protest before the Government Accountability Office ("GAO") challenging the task order award to Iron Mountain under the RFQ. The GAO docketed the protest as B-423513.1.

40. On May 9, 2025, the IRS filed a "Determination and Findings to Continue Performance" of Iron Mountain's task order, providing the agency's justification for overriding the statutory stay of performance required under the Competition in Contracting Act of 1984 ("CICA"), 31 U.S.C. § 3553(d)(3)(ii). Ex. 4. The IRS cited "significant adverse consequences" and "no reasonable alternatives" as the justifications for the override. *Id*.

41. With regard to "significant adverse consequences," the override notice stated that, "notwithstanding the interest of ensuring competition in the public procurement system is protected," the IRS is proceeding with a sole source award to save taxpayers the expense of the IRS "spending over $300 million per year in the processing and handling of paper correspondence." *Id*. It also states that "work cannot be performed under any other contracts that the Agency has because it is new work that would be outside the scope of any existing awards." *Id*.

42. The notice stated that "[t]here are no reasonable alternatives" to overriding the stay because "there will be a lapse in service that would be detrimental to the Agency's mission and cost the American taxpayers at least $173,000 per day." *Id*.

43. The notice also stated that, "[a]lthough the SCaaS Task Order is for new work, this work is a temporary stopgap (i.e., 'bridge' contract) to get the Agency from the pilot program it has previously run." *Id*. Perhaps recognizing that an 18-month contract comprised of a 12-month base period and 6-month option is hardly "temporary," the IRS stated that during this period, it would "continue market research." *Id*. It claimed that the "IRS needs additional time to work with vendor to determine how they might be able to meet the Agency's needs so that before these SCaaS Task Order expires, a competitive solicitation can be issued for the long-term awards." *Id*.

44. Although the IRS claimed it needs additional time for a competitive solicitation, the IRS has been planning the SCaaS contract since at least 2021, when it began the SCaaS pilot program. Upon information and belief, in 2023, the IRS retained services from McKinsey & Company for assistance in creating an enterprise scanning requirement, business case, and acquisition strategy. In February 2024, the IRS then hosted an Inflation Reduction Act Industry Day, where the IRS shared it planned to release an enterprise SCaaS contract. In June 2024, GovCIO received an IRS presentation that stated the target release of the enterprise scanning services was the third quarter of FY 2025.

45. The extensive prior planning of the SCaaS contract and the lengthy 18-month contract period demonstrates that the IRS did not merely acquire short-term scanning services on an emergency, true "bridge" basis until it could conduct a competition but is instead using alleged, self-made urgencies to avert competition requirements for a long-term acquisition.

46. The alleged "bridge" contract awarded to Iron Mountain, in other words, is not an

emergency stopgap for the continuation of essential services but is effectively the launch of the IRS's enterprise solution itself.

47. At no point in the override notice did the IRS address the active and competitively-awarded DCAS contract vehicle, which covers substantially similar services as the SCaaS task order. The IRS ignored that the DCAS contract provides a "reasonable alternative" and allows the IRS to avoid "significant adverse consequences" while maintaining the government's "interest of ensuring competition in the public procurement system is protected."

## COUNT I

### (Depriving GovCIO of an Opportunity to Compete Was Arbitrary, Capricious, and Contrary to Law)

48. GovCIO incorporates the allegations above as if fully stated here.

49. When placing orders against the GSA MAS and, as here, a statement of work is required and the value exceeds the simplified acquisition threshold, "[e]ach order ***shall be*** placed on a competitive basis in accordance with (c)(3)(ii) and (iii) of this section." FAR 8.405-2(c)(3)(i) (emphasis added).

50. Paragraph (c)(3)(ii) states that the "ordering activity contracting officer ***shall provide an RFQ*** that includes a statement of work and the evaluation criteria," and paragraph (c)(3)(iii) states the procuring agency must:

   (A) Post the RFQ on eBuy to ***afford all schedule contractors*** offering the required services under the appropriate multiple-award schedule(s) ***an opportunity to submit a quote***; or

   (B) Provide the RFQ ***to as many schedule contractors as practicable, consistent with market research*** appropriate to the circumstances, to reasonably ensure that quotes will be received from at least three contractors that can fulfill the requirements. When fewer than three quotes are received from schedule contractors that can fulfill the requirements, the contracting officer shall prepare a written determination to explain that no additional contractors capable of fulfilling the requirements could be identified despite

        reasonable efforts to do so. The determination must clearly explain efforts made to obtain quotes from at least three schedule contractors.

   (C)      Ensure all quotes received are fairly considered and award is made in accordance with the evaluation criteria in the RFQ.

FAR 8.405-2(c)(3)(ii), (iii) (emphasis added).

51. In addition, the FAR requires that ordering activities "provide the RFQ (including the statement of work and the evaluation criteria) to any schedule contractor who requests a copy of it." *Id.* at 8.405-2(c)(4).

52. The award of the task order to Iron Mountain under the RFQ for scanning services was unlawful.

53. The IRS was required to issue the RFQ publicly and afford GovCIO, and other interested vendors, an opportunity to assemble a competitive team and submit quotes.

54. The IRS was also, separately, required to provide the RFQ specifically to GovCIO consistent with its market research, which showed or should have shown that GovCIO is fully qualified, experienced, and capable of meeting the IRS's scanning needs.

55. The IRS was further required to provide the RFQ to GovCIO because GovCIO requested an opportunity to compete by virtue of its response to the RFI.

56. Even if GovCIO had not responded to the RFI and made its interest in this procurement explicit, the IRS knew that GovCIO is currently performing substantially similar if not identical scanning services under the DCAS contract with substantial number of personnel already cleared by the IRS. The IRS claims the SCaaS task order involves "new work that would be outside the scope of any existing awards," but makes no attempt to address why the DCAS contract detailed in GovCIO's GAO protest does not provide a competitive vehicle to procure the file scanning services. Ex. 4. There was no reasonable basis for the IRS to ignore this information.

57. Any market research conducted was necessarily flawed if it missed or overlooked the fact that GovCIO is a fully qualified and interested vendor. The override notice states that "GovCIO could not currently comply with Modernized eFile requirements" and was "looking to form a partnership with another vendor" to do so. *Id*. However, the IRS ignores that GovCIO's RFI response also stated that its existing ███████████████████████████████████ ██████████████████████, as detailed below, on information and belief, Iron Mountain also relies on an MeF team member to provide these requirements.

58. The IRS's market research was inadequate, or the IRS simply ignored the market research, including GovCIO's response to the RFI, given the speed at which it approved the award—just one week after receiving RFI responses.

59. Based on these facts, the IRS violated multiple provisions of the FAR regarding the competition of MAS orders.

60. Even if the IRS had not violated any FAR procedural requirements, the mere fact that the IRS excluded GovCIO from consideration was arbitrary, capricious, and unfair. The IRS also violated basic FAR principles, including the requirement to conduct procurements "in a manner above reproach … with complete impartiality and with preferential treatment for none." FAR 3.101. *See also* FAR 1.102(b) (identifying the conduct of business "with integrity, fairness, and openness" as a guiding principle of the FAR).

61. To the extent that the IRS will take the position that it was permitted to limit sources, none of the permissible grounds for limited competition can be satisfied here.

62. FAR 8.405-2(c)(3)(i) permits ordering activities to waive competition "on the basis of a justification that is prepared and approved in accordance with 8.405-6."

63. FAR 8.405-6(c), in turn, requires that the IRS identify the authority and supporting rationale for limiting sources and the market research conducted.

64. The only permissible authorities for restricting competition are:

(A) An urgent and compelling need exists, and following the procedures would result in unacceptable delays;

(B) Only one source is capable of providing the supplies or services required at the level of quality required because the supplies or services are unique or highly specialized; or

(C) In the interest of economy and efficiency, the new work is a logical follow-on to an original Federal Supply Schedule order provided that the original order was placed in accordance with the applicable Federal Supply Schedule ordering procedures.

FAR 8.405-6(a)(1)(i).

65. The IRS cannot reasonably contend that there is an urgent or compelling reason to avoid competition. The IRS is capable of conducting a competition quickly. Nothing in the record will demonstrate why the IRS cannot compete its requirement over a period of weeks. Its own decisions, such as lack of advance planning and insufficient agency resources, contributing to or creating any urgency are not reasonable justifications. The IRS also has significant funding available under the DCAS contract, which the IRS awarded on a competitive basis. It is inherently unreasonable for the IRS to argue that it has an urgent need to scan files without competition when it has significant capacity to scan these files on an ongoing, competitively-awarded contract. Any claim of urgency is also undermined by the IRS's own actions in connection with the DCAS contract, where the IRS has not handled employee clearances with any reasonable diligence. If the IRS needs additional scanning capacity, it can begin by processing the growing backlog of clearances on the DCAS contract.

66. The IRS cannot reasonably contend that there is only one source capable of providing these scanning services. Any such conclusion would obviously be false, as Iron Mountain is not the only contractor in the United States that can scan and digitize files for the IRS. GovCIO is currently providing scanning services for the IRS and the VA and is more than capable of meeting the IRS's requirement. The DCAS contract requires scanning, processing, digitization conversion, and transmission of documents and surge support. To the extent that the DCAS contract does not involve the IRS's MeF, GovCIO explained that its ███████████████ ███████████████████████████ and also ███████████████████████

67. Finally, the IRS cannot rationally argue that this task order is a logical follow-on. GovCIO is not aware of any competitively-awarded order to Iron Mountain under its MAS contract that would qualify for this exception, and it is not in the interest of efficiency or economy to procure scanning services without competition.

68. The IRS's pilot scanning program from several years ago was never intended to morph into a sole-source contract for Iron Mountain valued in excess of $140 million. Yet, by delaying the acquisition of an enterprise contract for SCaaS for up to 18 months, the IRS has effectively converted the pilot program into a sole-source contract for the enterprise solution itself at the expense of GovCIO, other interested vendors, and taxpayers who seek an opportunity to meet the IRS's scanning needs with competitive pricing.

69. Again, nothing prevented the IRS from issuing the RFQ to interested vendors and running a competition on an expedited basis. If the IRS needs more time—up to 18 months—to compete its enterprise SCaaS requirements, it must compete the current "bridge" in the interim.

70. The IRS's decision to exclude GovCIO from consideration was arbitrary and contrary to law. This decision prejudiced GovCIO because GovCIO is fully capable of meeting

the agency's requirements and would have offered the IRS a competitive quote in response to each RFQ representing the best value had the IRS followed FAR Part 8 procedures.

71. This protest challenges the IRS's actions in connection with the RFQ, as well as any other procurements for identical or substantially scanning and digitalization services that the IRS has not yet disclosed.

## COUNT II

**(Organizational Conflict of Interest and/or Unfair Advantage)**

72. GovCIO incorporates the allegations above as if fully stated here.

73. The FAR requires agencies to identify potential organizational conflicts of interest ("OCIs") "as early in the acquisition process as possible" and to "avoid, neutralize, or mitigate significant conflicts" before a contract is awarded so as to prevent an unfair competitive advantage. FAR 9.504(a). *See Jacobs Tech., Inc. v. United States*, 100 Fed. Cl. 198, 212 (2011) ("[A] contracting officer has ongoing responsibility to identify and evaluate OCIs and to ensure the integrity of the procurement system.").

74. FAR 9.505-2(b)(1) provides that "[i]f a contractor prepares, or assists in preparing, a work statement to be used in competitively acquiring … services-or provides material leading directly, predictably, and without delay to such a work statement-that contractor may not supply … the services." A biased ground rules type OCI focuses "on the concerns that a company, by participating in the process of setting procurement ground rules, have special knowledge of the agency's future requirements that may skew the competition in its favor." *Turner Constr. Co., Inc. v. United States*, 645 F.3d 1377, 1382 (Fed. Cir. 2011); *see also* FAR 9.505-1.

75. On information and belief, Iron Mountain assisted the IRS with developing the SCaaS procurement.

76. On information and belief, Iron Mountain is not itself an IRS MeF provider. This means Iron Mountain had to team with an MeF provider that had the capabilities to transmit the tax and information returns through the IRS's MeF. Iron Mountain's early input in the SCaaS procurement gave Iron Mountain an advance opportunity to secure an MeF teaming provider prior to the RFI, thus gaining an unfair competitive advantage.

77. On information and belief, the IRS has engaged in negotiations to sell or has sold IBML high-volume scanners to Iron Mountain that the IRS acquired in the last two years.[1] The IRS did not engage in negotiations with any other contractor for the sale of the IBML scanners. This provided Iron Mountain an unfair competitive advantage, including in achieving low pricing. Iron Mountain's award price of $142,406,958.04 indicates that Iron Mountain quoted pricing as low as $.10 per image. The IRS's sale or proposed sale of the IBML scanners gave Iron Mountain an unfair competitive advantage when responding to the RFI, which likely led the IRS to issue the RFQ exclusively to Iron Mountain and award the task order on a sole source basis.

78. The IRS failed to identify and neutralize the biased ground rules OCI and/or unfair advantage resulting from Iron Mountain's participation in developing or influencing the RFQ and SCaaS procurement.

---

[1] In October 2023, the IRS awarded Affigent, LLC a task order (No. 2023H524F00033) to provide IBML scanners to the IRS. The total award value was $9,592,094.06 and the period of performance was 12 months, ending in October 2024.

**PRAYER FOR RELIEF**

WHEREFORE, GovCIO requests judgment in its favor and an order:

A.  Declaring the award of the task order under the RFQ arbitrary, capricious, an abuse of discretion, and contrary to law;

B.  Preliminarily and permanently enjoining the IRS from proceeding with the task order awarded to Iron Mountain under the RFQ;

C.  Preliminarily and permanently enjoining the IRS from proceeding with any other contracts for identical or substantially similar file scanning and digitalization services;

D.  Directing the IRS to comply with competition requirements, provide the RFQ to GovCIO, and compete its file scanning and digitalization requirements; and

E.  Granting such other and further relief as the Court deems just and proper.

Dated: May 12, 2025                    Respectfully submitted,

                                       VENABLE LLP

                                       /s/ James Y. Boland
                                       James Y. Boland
                                       1850 Towers Crescent Plaza, Suite 400
                                       Tysons, Virginia 22182
                                       (703) 760-1997 (telephone)
                                       (703) 821-8949 (facsimile)
                                       jyboland@venable.com

                                       *Counsel for GovCIO, LLC*

Of counsel:

Lindsay M. Reed
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4659 (telephone)
(202) 344-8300 (facsimile)
lmreed@venable.com

Emily R. Marcy
1850 Towers Crescent Plaza, Suite 400
Tysons, Virginia 22182
(703) 760-1613 (telephone)
(703) 821-8949 (facsimile)
ermarcy@venable.com